UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COACH, INC. and COACH SERVICES, INC., | Civ. No. 11-4361 (KM) |
| Plaintiffs, | OPINION |
| v. | |
| LIN HU JIN, MINGLIANG JIANG, MINGLIANG INTERNATIONAL TRADING, INC., XIN LI, NGAN YING CHEE, MANDY CHEN, and GLOBAL FRIEGHT SYSTEMS, INC., | |
| Defendants. | |

**KEVIN MCNULTY, U.S.D.J.:**

    This case arose after the United States Customs and Border Protection agency informed Plaintiffs Coach, Inc. and Coach Services, Inc. ("Coach") that it seized a shipment of counterfeit handbags at Port Newark in September 2009. The shipment's consignee was Defendant Mingliang International Trading, Inc., 132-42 41st Avenue, 1st Floor, Flushing, New York. Coach alleges, based on documents it has obtained, that there have been numerous identical shipments of counterfeit bags, some of which were directed to 132-42 41st Avenue in Flushing. Coach has obtained default judgments or dismissed the complaint as against all defendants but one. (*See* ECF Nos. 32-36). As to that remaining defendant, Lin Hu Jin ("Lin"), Coach now moves for summary judgment.

    Coach falls woefully short of the standard set forth in Federal Rule of Civil Procedure 56. It has effectively sketched out a basis for investigating Lin, not for entering summary judgment against him. Its motion is denied without oral argument. *See* Fed. R. Civ. P. 78(b).

**Material Facts**

*i.    Lin's connection to this matter*

Lin, with his then-wife, leased space at 132-42 41st Avenue in Flushing from 2006 through April 2012. Lin states, and Coach has not disputed, that they were in the business of subletting their entire leasehold to short-term visitors from China, and that their office was located on the first floor. One of the office's phone numbers appears on two of the ten shipping invoices which, according to Coach, pertain to alleged illegal shipments. On this limited factual basis, Coach contends that Lin and the other defendants, who have defaulted, "orchestrated a long-running conspiracy to willfully purchase, import, distribute, offer for sale, and/or sell in the U.S. more than $105 million dollars' worth of counterfeit handbags."

Lin stated, at his deposition, that he is a native of China who came to the United States in 2001, eventually making his way to the Flushing neighborhood of Queens. He married Geng Yun Liu in 2008. They had a daughter together, but divorced in April 2012. (Deposition Transcript at 28:16-31:25, Bigham Cert. Ex. G). Lin stated that over the last several years, he has done a variety of temporary jobs, ranging from restaurant waiter to sushi preparer to furniture hauler. In addition, he and his wife made money by subleasing rooms to Chinese visitors and students. (*Id.* at 51:6-57:8). Starting in early 2006, his soon-to-be wife leased the first and third floor of 132-42 41st Avenue, and he assisted her in the business of subletting rooms on those floors. (*Id.* at 51:6-52:25; 64:9-15). By 2008, they also leased the fourth, second, and basement floors of the building, for the similar purpose of subletting the spaces. (*Id.* at 56:9-60:12; 137:4-139:19). They did not live in the building. (*Id.* at 54:12-54:24). Lin also stated that one of the phone numbers associated with the first floor of the building was 718-321-8323, and that he and his wife used it as an office line for their subletting business. (*Id.* at 110:11-116:24).

In its first amended complaint, Coach makes no specific allegation regarding Lin except to say that Lin "is an individual who resides at 132-42 41st Avenue, Flushing, New York." The complaint also alleges that Defendant Mingliang Jiang resided at the same address and Defendant Mingliang International Trading, Inc. ("Mingliang") used the same address as its primary place of business. It does not allege any further connection between Lin and these Defendants.

*ii.    The Shipments in Question*

Coach has offered uncontradicted evidence that U.S. Customs and Border Protection (CBP) seized 30,150 counterfeit Coach handbags domestically valued at $162,004.00 at Port Newark on September 3, 2009

2

(Bigham Cert. Exs. B, D). CBP stated, in its October 5, 2009 report to Coach, that the "import date" of the merchandise, by way of the vessel "NYK Delphinus," was also September 3, 2009. CBP estimated that the bags, if authentic, would represent $10.5 million in retail value, and reported that the ultimate consignee of the merchandise was MingLiang International Trading, 132-42 41st Ave., 1st Floor, Flushing, New York, 11355. (*Id.*).

Coach alleges that this shipment of handbags was falsely manifested as 220 cartons of alkaline batteries and that the consignee of the shipment had a phone number of 718-321-8323. For this, Coach relies on an Arrival Notice/Freight Notice dated June 16, 2009, which describes a shipment to Mingliang on board the NYK Delphinus, with an estimated time of arrival of June 21, 2009. (Bigham Cert. Ex. E). Coach has not established that this Invoice relates to the shipment seized in September.

Coach also offers notices and invoices evidencing the following ten shipments, all but one of which are described as 220 cartons of alkaline batteries:

1. 4/5/06 Estimated Arrival
   Port of Discharge: Tacoma, Washington
   Consignee: "Gillingham Trading Ltd., 90-24 43rd Ave, 2nd FL, Elmhurst, NY 11373 TEL: 917-913-5346[.]"
   (Bigham Cert. Ex. L).

2. 5/10/06 Estimated Arrival
   Port of Discharge: Tacoma, Washington
   Consignee: "Gillingham Trading Ltd., 90-24 43rd Ave., 2nd FL, Elmhurst, NY 11373 TEL: 917-913-5346[.]"
   (Bigham Cert. Ex. N).

3. 1/24/07 Estimated Arrival
   Port of Discharge: New York
   Consignee: "Gillingham Trading Ltd., 90-24 43rd Ave., 2nd FL, Elmhurst, NY 11373 TEL: 917-913-5346[.]"
   (Bigham Cert. Ex. P).

4. 3/12/07 Estimated Arrival
   Port of Discharge: New York
   Consignee: "Cillingham Trading Ltd., 9024 43rd Ave. 2nd FL, Elmhurst, NY 11373 TEL #917-913-5346[.]"
   (Bigham Cert. Ex. S).

5. 8/30/07 Estimated Arrival
   Port of Discharge: New York
   Consignee: "Gillingham Trading Ltd., 53-37 196th Street 2nd Floor,

    Fresh Meadows, NY 11365 TEL: 917-913-5346[.]"
(Bigham Cert. Ex. U).

6. 2/4/09 Estimated Arrival
   Port of Discharge: New York
   Consignee: "Zhong Sheng International Trading Inc., 41-69 Parsons Blvd. Apt. #4F Flushing, NY – 11355 Phone: 646-301-9680[.]"
   (Bigham Cert. Ex. X).

7. 2/11/09 Estimated Arrival
   Port of Discharge: New York
   Consignee: "Mingliang International Trading Inc. 132-42 41 Ave. 1 Fl. Flushing, NY – 11355 Phone: 7183218328[.]"
   (Bigham Cert. Ex. J).

8. 6/21/09 Estimated Arrival
   Port of Discharge: New York
   Consignee: "Ming Liang International, 132-42 41 Ave., Flushing, NY 11355 USA TEL: 718-321-8323[.]"
   (Bigham Cert. Ex. E).

9. 8/19/09 Estimated Arrival
   Port of Discharge: New York
   Consignee: "Zhong Sheng International Trading Inc., 41-69 Parsons Blvd. Apt. #4F Flushing, NY – 11355 TEL: 646-301-9680[.]"
   (Bigham Cert. Ex. Z).

10. 1/22/11 Estimated Arrival
    Port of Discharge: New York
    Consignee: "Wei Lang Technology Inc., 32-12 41 Ave., 1 Floor, Flushing, New York 11355 TEL: 917-813-5346[.]"
    (Bigham Cert. Ex. EE).[1]

    Even indulging the problematic assumption that invoice no. 8 relates to the shipment of counterfeit bags seized by CBP in September 2009, this list contains just one other shipment (no. 7) that is associated with Lin's address.

    *iii.*   *The Importing Entities*

    As to the identities of the various importing entities listed above, Coach offers documentary evidence that:

> -Mingliang was incorporated in 2008 by individual Defendant Mingliang Jiang. (Bigham Cert. Ex. F).

---

[1] This invoice (no. 10) describes the imported merchandise as "180 CTNS Pressure Washer Accessories, 3870.00 KGS," not alkaline batteries.

-Wei Yang Technology Inc. was also incorporated in 2008 by individual Defendant Mingliang Jiang (Bigham Cert. Ex. BB), and its president was individual Defendant Xin Li. (Bigham Cert. Ex. DD).

-Gilligham Trading Ltd.'s president was also Xin Li, and Gillingham gave a power of attorney to Best Systems Inc. (Bigham Cert. Ex. K).

-Zhong Sheng International's president was non-party Shu Ping Yang, and Zhong Sheng gave a customs power of attorney, signed by Xin Li, to Best Systems Inc. (Bigham Cert. Ex. W).

-Defendant Ngan Ying Chee routinely signed checks on behalf of Defendant Global Freight Systems, Inc., non-party Global International Logistics, Inc. and non-party Global Logistic Group, Inc., paying for the services of Best Systems Inc. and UCM Shipping Agency, Inc. (Bigham Cert. Exs. I, M, O, Q, T, V, Y, AA, FF).

None of the foregoing evidence suggests that Lin has any involvement with these entities.

### iv.  Lin's Contentions

Lin contends, in his opposition to Coach's motion, that he was merely a tenant who would sublet space at 132-42 41st Avenue to various persons. He states that he has no connection to the counterfeited bags and that the documents suggest strongly that Ming Liang Jiang is the responsible party.

### **Legal Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment is appropriate where "there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law."); *Alcoa v. U.S.*, 509 F.3d 173, 175 (3d Cir. 2007). A court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).

"[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Celotex*, 477 U.S. at 323. If the moving party

makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 247-48. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

If a party fails to address the other party's properly supported assertion of fact, the court may consider "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). Although Local Civil Rule 56.1(a) deems a movant's statement of material facts undisputed where a party does not respond or file a counterstatement, a failure to respond "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)). In other words, the Court may take all of a movant's assertions of fact as true yet still find that the underlying legal standard has not been met, or that there are genuine issues of fact not resolved by the undisputed facts.

Where, as here, the nonmoving party is appearing pro se, "the court has an obligation to construe the complaint liberally." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n. 6 (3d Cir. 1997)). I have construed Lin's pleadings and filings in that liberal spirit. For purposes of this motion, I have credited his factual contentions as if they had been contained in sworn affidavits. I find no harm in doing so, because Coach's proofs, even standing alone, are insufficient to support summary judgment.

### Analysis

Coach contends that the documents described above "show the conspiratorial connections between Lin and all of his co-defendants and demonstrate the true scope of Defendants' counterfeiting activities." It thus seeks to hold Lin liable for "a far larger scheme that involved at least ten separate shipments containing 296,010 counterfeit COACH brand handbags having an astonishing retail value of $105,971,580."

I reject Coach's contention. Coach requests that the Court reach grave conclusions based on conjecture. I am not remotely able to find, without any genuine dispute, that Lin has *any* relation to the September 3, 2009 shipment of counterfeited merchandise, to any of the other shipments in question, or to any of the persons that the documents suggest are responsible for these

6

shipments. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322. There are, in fact, gaping issues of fact on this basic predicate question.

The evidence regarding Lin raises an eyebrow and certainly justifies investigation by Coach. Yet not a single document or statement obtained in this investigation connects Lin to the shipments in question or to the plethora of persons and entities appearing on the documents. Apparently, Coach has not deposed (or perhaps has not been able to depose) any of the connected individuals to see what they have to say about Lin.

Rather, Coach rests on loose circumstantial evidence. For purposes of argument, I might even accept Coach's assertion that all of the shipments contained counterfeit bags and were falsely manifested. Even so, I could not find sufficient evidence that Lin had any role in the alleged scheme. It is equally plausible that someone else in Lin's building orchestrated the scheme, or that some schemer simply borrowed Lin's address and phone number as a means of concealing his or her own identity. Coach has not presented any significant evidence regarding Mingliang Jiang or Xin Li, among others, making it impossible to even speculate as to Lin's relationship, if any, to them.

The concrete evidence here is that Lin conducted business at the same address as Mingliang, listed as the owner of the seized shipment. That fact is not sufficient to support an inference that Lin used Coach Trademarks in connection with importing, distributing, selling and/or offering for sale any goods. Such "guilt by location" is not a viable theory of liability.

## CONCLUSION

Coach's motion papers are insufficient to support summary judgment as against this particular defendant, Lin Hu Jin. For the reasons stated above, Plaintiff's motion for summary judgment is **DENIED**. An appropriate order follows.

_____
KEVIN MCNULTY
United States District Judge

Date: October 7, 2013